1  DILLINGHAM & MURPHY, LLP
   THOMAS J. KLITGAARD (STATE BAR NO. 33876)
2  WILLIAM F. MURPHY (STATE BAR NO. 82482)
   JOHN N. DAHLBERG (STATE BAR NO. 85122)
3  225 Bush Street, 6th Floor
   San Francisco, CA 94104-4207
4  Telephone:    (415) 397-2700
   Facsimile:    (415) 397-3300
5
   Attorneys for Plaintiff SAFEWAY INC.
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11  SAFEWAY INC., a Delaware Corporation,        NO. CV 11-00761 CW

12                 Plaintiffs,

13                                                **SAFEWAY'S OPPOSITION TO**
                                                  **MOTION TO DISMISS**
14         v.

15  CITY AND COUNTY OF SAN FRANCISCO;            **Date:  June 2, 2011**
    THE BOARD OF SUPERVISORS FOR THE            **Time:  2 PM**
16  CITY AND COUNTY OF SAN FRANCISCO;            **Courtroom: 2, 4th Floor**
    and EDWIN M. LEE, in his official capacity of
17  Mayor of the City and County of San Francisco,

18                 Defendants.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................. 1

II. SUMMARY OF COMPLAINT ALLEGATIONS AND ARGUMENT ............................ 2

III. THE MOTION TO DISMISS SHOULD BE DENIED ........................................ 4

    A. First Claim: Properly Construed, the Amended Ordinance Entitles Safeway to the Issuance of a Permit to Sell Tobacco Products In Its San Francisco Stores. ...... 5

    B. Second Claim for Relief: The requirement that Safeway give up its right to operate a lawful business, a pharmacy licensed by the State, in order to conduct another lawful business, a retail grocery store that sells lawful tobacco products and many other products, is an unconstitutional condition. .................................. 8

    C. Third Claim for Relief: The Ordinance As Amended Violates Federal and State Guarantees of Equal Protection ...................................... 11

        1. The Ordinance Treats Similarly-Situated Businesses Differently ......... 11

        2. The Classification Adopted By the Amended Ordinance Is Not Rationally Related to Any Legitimate Purpose. ................................ 14

    D. Fourth Claim for Relief: The Amended Ordinance Violates Safeway's State and Federal Due Process Rights Because, as the City's Legislative History and Judicial Admissions Establish, It Has No Substantial Relationship to Public Health or Welfare .................................................. 19

    E. Fifth Claim for Relief: The Ordinance is Preempted Because It Intrudes Upon the State's Exclusive Control of the Pharmacy Profession. ..................... 20

        1. The State of California Comprehensively Regulates the Profession of Pharmacy For the Safety and Protection of the Public. ....................... 21

        2. The Ordinance Invades the State's Exclusive Regulation of the Pharmacy Profession. ......................................... 22

IV. CONCLUSION. ............................................................... 24

1

## TABLE OF AUTHORITIES

**Cases**

2  Agnew v City of Los Angeles (1958) 51 Cal.2d 1, ........................................ 23

3  American Financial Services Ass'n. v. City of Oakland (2005) 34 Cal 4th 1239 ........................ 22

   Bacon v Los Angeles (1970) 2 Cal.3d 535 ........................................ 23

4  California Teachers Assn. v. Governing Bd. Of Rialto Unified School Dist.,
     14 Cal 4th 627, 633 (1997) ........................................ 8

5  Carlin v. City of Palm Springs (1971) 14 Cal.App.3d 706 ........................ 17

   City & County of San Francisco v Boss (1948) 83 Cal.App.2d 445 ........................ 23

6  Committee of United States Citizens Living in Nicaragua v. Reagan

7    (D.C.Cir. 1988) 859 F.2d 929 ........................................ 20

   Dobbins v. Los Angeles (1904) 195 U.S. 223 ........................................ 9

8  Dyer v. Dept of Motor Vehicles (2008) 163 Cal.App.4th 161 ........................ 7

   Fenn v. Sherriff (2003) 109 Cal.App.4th 1466 ........................................ 13

9  Foucha v. Louisiana (1992) 504 U.S. 327 ........................................ 20

10 Frost v. Railroad Commission of the State of California (1926) 271 U.S. 583 ........ 9

   Horwith v Fresno (19460 74 Cal.App.2d 443 ........................................ 23

11 Lawton v. Steele (1894) 152 U.S. 133 ........................................ 10

   Lundgren v. Dukmejian, 45 Cal. 3d. 727, 735 (1988) ........................ 6

12 Mercer v. Department of Motor Vehicles (1991) 53 Cal. 3rd 753 ........................ 7

13 New York Friends of Ferrets v. The City of New York (S.D.N.Y. 1995) 876 F.Supp. 529 ......... 19

   Nollan v. California Coastal Com'n (1987) 483 U.S. 825 ........................ 6,8

14 Nordlinger v. Hahn (1992) 505 U.S. 1, 10, 112 S.Ct. 2326 ........................ 11,14,34

   O'Connell v City of Stockton (2007) 41 Cal.4th 1061, 1073-1076 ........................ 24

15 O'Hagen v. Board of Zoning Adjustment of the City of Santa Rosa
     (1971) 19 Cal App. 3d 151 ........................................ 10

16 People v. Nguyen (1997) 54 Cal.App.4th 705 ........................................ 13

   Rinaldi v. Yeager (1966) 384 U.S. 305 ........................................ 12,14

17 Robillwayne Corp. v City of Los Angeles (1966) 241 Cal. App. 2d 57 ........................ 23

18 Rosenblatt v California State Bd. Of Pharmacy (1945) 69 Cal.App.2d 69 ........................ 23

   Sherwin-Williams Co. v. City of Los Angeles (1993) 4 Cal.4th 893 ........................ 22

19 Tolman v Underhilll (1952) 39 Cal. 2d 708 ........................................ 22

   Tosi v City of Fresno (2008) 161 Cal.App.4th 799 ........................................ 24

20 United States Steel Corp. v. Public Utilities Com., supra, 29 Cal.3d at 613 ........................ 19

21 Verner, Hilby & Dunn v. City of Monte Serreno (1966) 245 Cal.App.2d 33 ........................ 23

   Walgreen Co. v. The City and County of San Francisco, 2009 WL 1933273 at p. 4 ........... 15,18

22 **Statutes**

   Business & Professions Code § 4037 ........................................ 5

23 Health Code Section 1009.91(e) ........................................ 24

24

25

26

27

28

## I.   PRELIMINARY STATEMENT.

In 2008, the City and County of San Francisco ("the City") enacted an Ordinance prohibiting the sale of tobacco products in any drugstore or pharmacy.  Dr. Mitchell Katz, Director of the City's Department of Public Health, testified before the City's Board of Supervisors that the public might wrongly infer that tobacco products were safe when sold in such places as Walgreen drug stores, because the public has great trust in licensed pharmacists, and visited drug stores primarily for drugs and medicinal products.

Dr. Katz also emphasized that the public was *not* likely to conclude that tobacco products are safe when they are sold in grocery stores (or "big box" stores) that merely have pharmacy departments, because these stores do *not* primarily sell drugs and medicines, and are not under the overall control of a licensed pharmacist.  City Request for Judicial Notice, Exhibit A., pp. 4-6. The original Ordinance therefore excluded grocery stores and big box stores with pharmacies from the prohibition of tobacco product sales. San Francisco Health Code Section 1009.93.

The Walgreen Company sued, contending the Ordinance violated its rights to Equal Protection.  The City vigorously defended the Ordinance's exclusion of grocery stores with pharmacies before the Court of Appeal, making judicial admissions in its Appellate Brief fatal to its arguments in this case:

> "[N]obody would dispute that if doctor's offices sold cigarettes, this would send the wrong message about smoking, because doctors are widely understood to be in the business of promoting health.  *By comparison, the sale of cigarettes by big box stores and grocery stores does not create nearly the same problem, because those stores are not viewed as health-promoting institutions in nearly the same way.*" 2009 WL 1933273 at p. 4, or see Brief at Exh. 1 to Safeway's Request for Judicial Notice ("RJN"), p. 1.

> "[T]he interchangeable use of the terms 'drug store' and 'pharmacy' further proves our point by confirming *the common sense assumption, adopted by the Board, that society views drug stores differently from big box stores or grocery stores.  **Nobody would describe Safeway or Costco as a 'pharmacy.'**"  *Id.* at *18 [emphasis supplied].

The City lost the *Walgreen* case in the Court of Appeal.  *See* 185 Cal.App.4th 424; Complaint, Exh. D.  The Court of Appeal held that the original Ordinance treated some retail stores with pharmacies differently than others, a violation of the right to Equal Protection.

1   Although the Court of Appeal's decision also could be read to suggest, in *dicta*, that it might be

2   acceptable as a matter of Equal Protection to treat retail stores with pharmacies differently than

3   retail stores without pharmacies for purposes of the ban on sale of tobacco products, no such stores

4   were represented in the *Walgreen* case, and no arguments were heard on their behalf.

5         Following the invalidation of the original Ordinance, the City deleted the original

6   Ordinance's exclusion of general grocery stores and big box stores with pharmacy departments,

7   despite the previous testimony of the Director of Public Health, Dr. Katz, in support of the

8   exclusion in the original Ordinance, and the City's later judicial admissions before the Court of

9   Appeal, which both emphasized that the public is **not** misled into believing tobacco products sold

10  at grocery stores with pharmacy departments are safe.   The City broadened the Ordinance to

11  include grocery stores in order to preserve its application to drug stores like Walgreen drug stores.

12  Safeway's property and other constitutional rights should not be sacrificed to preserve the City's

13  original desire to avoid customer confusion arising from the sale of cigarettes in drug stores.

14        The City now asserts as a rational basis for its expansion of the Ordinance that grocery

15  stores with pharmacies convey the wrong message by selling tobacco products, just like drug

16  stores.  The City took a contradictory position in the *Walgreen* action, basically admitting that

17  grocery stores with pharmacies are similarly situated to other grocery stores – not drug stores with

18  pharmacies.  Where, as here, the asserted "rational basis" for differential treatment has been

19  acknowledged by the City to be factually inaccurate, the ensuing classification resting on that

20  basis should be held to be irrational.

21  ## II.   SUMMARY OF COMPLAINT ALLEGATIONS AND ARGUMENT.

22        The complaint seeks declaratory and injunctive relief directed to San Francisco Ordinance

23  No. 245-10, effective November 7, 2010 ("Ordinance") to compel the City to issue permits to sell

24  tobacco products to the 10 Safeway stores in San Francisco that also contain pharmacies.  The

25  complaint asserts that the amended Ordinance should be construed to prohibit the sale of tobacco

26  products only "in a pharmacy" as that term is commonly understood (**First Claim for Relief**).[1]

27  ----

28  [1]  Contrary to the City's assertion that the First Cause of Action "does not appear to assert an
actual legal theory" (Opening Brief at 5 n.3), this claim seeks Declaratory Relief that the City's

1   According to the City, the Ordinance as amended authorizes it to deny a permit to sell tobacco

2   products to any store in which a pharmacy is located, even though the activities in the other parts

3   of the store do not involve places where the profession of pharmacy is practiced or where

4   prescriptions are compounded (Business and Professions Code Section 4037(a)).  The complaint

5   seeks a declaration that the Ordinance does not apply to sales of tobacco products outside of a

6   licensed pharmacy, and because Safeway does not sell tobacco products in its pharmacies, it is not

7   subject to the Ordinance, either as to existing stores with pharmacies or stores in which separate

8   pharmacies may be placed in the future.

9        Safeway's next three Constitutional claims need to be addressed only if the Court

10  interprets the amended Ordinance to prohibit the sales of tobacco products throughout any store

11  containing a pharmacy somewhere within its confines.  The Complaint challenges the amended

12  Ordinance as applied by the City on the grounds that it improperly conditions the issuance of a

13  permit to sell tobacco products on Safeway's willingness to renounce its Constitutionally-

14  protected right to pursue a lawful business, pharmacy, and also improperly requires Safeway to

15  choose between two Constitutionally-protected rights (the right to practice pharmacy; the right to

16  sell lawful tobacco products) (**Second Claim for Relief**).  The City contends that there is no

17  Constitutional right (State or Federal) to conduct a lawful business or to sell lawful tobacco

18  products, and even if there are such rights, they are not "fundamental."  The City's argument is

19  inaccurate – there is a State and Federal constitutional right to pursue a lawful business and to sell

20  lawful products.  Whether or not those rights are labeled "fundamental" is immaterial to the

21  analysis.

22       The Complaint also alleges that the amended Ordinance as applied constitutes a denial of

23  equal protection to Safeway, because it allows competitors and other similarly situated businesses

24  without pharmacies to sell tobacco products in their stores, but irrationally denies that right to

25  Safeway stores with pharmacies based on an asserted legislative fact admitted by the City to have

26  
27  interpretation of sales "in a pharmacy" is invalid and that the Ordinance's reach should be construed to ban sales of tobacco products only in stores' pharmacies, but not in other areas of the
28  stores. See Complaint ¶¶ 70-73.

1   been false (**Third Claim for Relief**), and is a denial of due process because it is arbitrary (**Fourth**

2   **Claim for Relief**).   The City responds that there is no denial of Equal Protection because stores

3   with pharmacies are not similarly-situated to stores without pharmacies, and that even if they are

4   similarly situated, the classification created by the amended Ordinance has a rational basis – i.e.,

5   that grocery stores and big box stores with pharmacies, just as Walgreen Drug Stores, are part of

6   the "health care delivery system" and that participants in the "health care delivery system" should

7   not sell tobacco products.  The City's argument that stores with pharmacies are not similarly

8   situated to stores without pharmacies for purposes of the issuance of permits to sell tobacco

9   products is untenable as a matter of fact, and is untenable as a matter of law.  Its point that there is

10  a "rational basis" for treating such stores differently because stores with pharmacies are part of the

11  "health care delivery system" is inaccurate, as even the City admitted in its briefing in the

12  *Walgreen* case: "By comparison, the sale of cigarettes by big box stores and grocery stores does

13  not create nearly the same problem, *because those stores are not viewed as health-promoting*

14  *institutions in nearly the same way.*"  2009 WL 1933273 at p. 4; RJN Exh. 1, p. 1.  "*[S]ociety*

15  *views drug stores differently from big box stores or grocery stores.*  ***Nobody would describe***

16  ***Safeway or Costco as a 'pharmacy.'***"  *Id.* at *18 [emphasis supplied].

17          Finally, the Complaint asserts that the City's amended Ordinance is preempted by

18  California law, which occupies and pervasively regulates the field of pharmacy (**Fifth Claim for**

19  **Relief**).  Although the City contends that state law does not preclude it from regulating the sales of

20  tobacco products, that argument misses the point:  the amended Ordinance by its terms regulates

21  the conduct of pharmacists and pharmacies, which are exclusively the province of the State of

22  California.

23  **III.     THE MOTION TO DISMISS SHOULD BE DENIED.**

24  **A.      First Claim:  Properly Construed, the Amended Ordinance Entitles Safeway**
            **to the Issuance of a Permit to Sell Tobacco Products In Its San Francisco**
25          **Stores**.

26          The amended Ordinance provides (see Complaint, Exh. E):  "No person shall sell tobacco

27  products <u>**in a pharmacy.**</u>"  Section 1009.92 [emphasis supplied in this and subsequent citations].

28

1   It also provides that "[n]o permit [to sell tobacco products] shall issue if the Director finds that the

2   applicant is * * * a **pharmacy** prohibited from selling tobacco products under Article 19J."

3   Section 1009.53.   "Pharmacy" is a defined term in the amended Ordinance.  Article 19J(c) of the

4   Ordinance, as amended, provides that " '**Pharmacy**' shall mean a retail establishment in which the

5   profession of **pharmacy** by a pharmacist licensed by the States of California in accordance with

6   the Business and Professions Code is practiced and where prescriptions are offered for sale.  A

7   pharmacy may also offer other retail goods in addition to **prescription pharmaceuticals**."[2]

8   Section 1009.91(c).  The amended Ordinance does not define the term "retail establishment."

9        The City's position is that the definition of "pharmacy" is broad enough the permit it to

10  regulate an entire grocery store with a pharmacy somewhere in it.  But that is not the Ordinance

11  the City wrote, and then amended.  The language of the amended Ordinance, properly construed,

12  should allow Safeway to obtain a permit from the City to sell tobacco products in its stores with

13  pharmacies, provided that such sales are not made "in" the actual pharmacies.  Although "retail

14  establishment" is not defined in the amended Ordinance, Safeway believes it should mean the

15  actual pharmacy, a definition supported by the repetitive use of the term "in a pharmacy" in the

16  amended Ordinance and in the legislative history, and by the fact that in every instance, the

17  pharmacy is a separate, locked entity with its own cash registers and personnel who do not work in

18  any other departments of the grocery store.  See, e.g., Complaint ¶¶ 12-13 & 18; see also Business

19  & Professions Code § 4037.

20       The City, however, interprets the amended Ordinance to mean that the presence of a

21  licensed pharmacy anywhere on the premises of any San Francisco retailer disqualifies that retailer

22  from receiving a permit to sell tobacco products anywhere in the rest of the store, apart from the

23  pharmacy, including the customer service area, which is typically near the entrance to the store

24  _____

25  [2] Note: in the amended Ordinance, the City struck the provision that "[f]or purposes of this
    Article, '**pharmacy**' includes retail stores commonly known as **drugstores**."  Emphasis added.

26  The striking of this provision from the amended Ordinance supports Safeway's position that the
    amended Ordinance, properly construed, only bans sales of tobacco products "in" a pharmacy as

27  that term is generally understood, because it removes language implying that the ban on tobacco
    sales might extend beyond sales "in" a pharmacy.

28

1   (and, in 9 of the 10 affected stores in San Francisco, is not visible from the pharmacy, and vice

2   versa).

3          The Court should construe the amended Ordinance to determine whether the City's

4   interpretation or Safeway's interpretation comports with the plain meaning of the words in the

5   amended Ordinance.  If the Court determines that Safeway's interpretation of the amended

6   Ordinance is correct, then the Court need not reach Claims 2-5, the Federal and California

7   Constitutional issues raised by Safeway.

8          Words in a statute or ordinance must be given their ordinary and commonly understood

9   meanings, unless specifically identified otherwise.  In *Nollan v. California Coastal Com'n* (1987)

10   483 U.S. 825, 831, the Supreme Court noted that it was inappropriate to use words "in a manner

11   that deprives them of all their ordinary meaning."  In *Lundgren v. Dukmejian*, 45 Cal. 3d. 727, 735

12   (1988), the California Supreme Court laid out this precept in clear language (internal citations

13   omitted):

14          "Words in a statute or constitutional provision should be given the meaning they
             bear in ordinary use.  If the language is clear and unambiguous there is no need
15          for construction, nor is it necessary to resort to indicia of the intent of the
             Legislature (in the case of a statute) or of the voters (in the case of a provision
16          adopted by the voters)."

17   In the case at bar, the amended Ordinance prohibits sales of tobacco products "in" a

18   pharmacy.  *See* Section 1009.60 ["No person shall sell tobacco products **in a**

19   **pharmacy**"], and the findings of the Board of Supervisors in support of the Ordinance,

20   for example: "Finding 8.  In 1970, The American Pharmaceutical Association stated that

21   mass display of cigarettes **in pharmacies** is in direct contradiction to the role of a

22   **pharmacy** as a public health facility;  Finding 9.  The Tobacco Education and Research

23   Oversight Committee for California, as well as the American Pharmacists Association,

24   the California Pharmacists Association, and the California Medical Association have

25   called for the adopting of state and local prohibitions of tobacco sales **in drugstores** and

26   **pharmacies**;* * *."  Emphasis added.

27

28

1   In *Mercer v. Department of Motor Vehicles* (1991) 53 Cal. 3rd 753, 763 [subsequently

2   superseded by statute on other grounds; see *Dyer v. Dept of Motor Vehicles* (2008) 163

3   Cal.App.4th 161, 168], the California Supreme Court pointed out that it is proper to use a

4   dictionary to determine the meaning of a word in a statute.  The usual and ordinary understanding

5   of the word "in" refers to a place or situs, as for example, *in situ*.  In Webster's Third New

6   International Dictionary (1981), cited by the California Supreme Court in the *Mercer* case, the first

7   listed (and primary definition) of "in" is the statement that the word is "used as a function word"

8   to indicate location or position in space or in some materially bounded object (put the key -- the

9   lock), travel--Italy) (play -- the street) * * *".  As shown by the allegations of the complaint, which

10  are deemed admitted by defendants for purposes of the defendants' motion, Safeway does **not** sell

11  any tobacco products "in" a pharmacy in San Francisco (Complaint, ¶¶ 13, 14).   It sold these

12  products at a customer service desk, which is separate and distinguishable (and in 9 of 10 cases,

13  invisible) from the pharmacy departments (*Id.* ¶¶ 16, 17, 18), through staff who were not involved

14  in pharmacy operations (*Id.* ¶ 18).

15       However, the City, in *applying* the amended Ordinance, has improperly enlarged the

16  definition of "pharmacy" to mean the entire balance of the retail property (no matter the size or

17  configuration of the property).  This expansive approach was an arbitrary and ill founded

18  application of the amended Ordinance, a quasi-penal statute, providing that  for a violation of the

19  Ordinance "administrative penalties shall [not may] be assessed and collected by the Director of

20  Health in accordance with the San Francisco Administrative Code Chapter 100."  Chapter 100

21  provided for fines.

22       The City defends the curious wording of the amended Ordinance, arguing that "[a]

23  legislature's choice of nomenclature, in and of itself, cannot possibly violate due process."  The

24  City goes on to state that the Ordinance uses language ["in a pharmacy"] that takes a bit longer to

25  read, but accomplishes exactly the same thing.   The City then asserts that "Safeway demeans the

26  Constitution by arguing that this word choice, which is utterly inconsequential from a practical

27  standpoint, creates a due process problem."  The City's argument misses the point.  We claim

28  instead that the City is expansively enforcing an Ordinance whose words are far narrower, and

which do not support the City's actions.   The City asks the Court to endorse its extrapolation of the amended Ordinance to hold that "in a pharmacy" means "in *and outside of* a pharmacy". This the Court should not do if it agrees with Safeway that "in" means "in." The California Supreme Court, in *California Teachers Assn. v. Governing Bd. Of Rialto Unified School Dist.*, 14 Cal 4th 627, 633 (1997), quoted long standing authority:

> "'As this court has often recognized, the judicial role in a democratic society is fundamentally to interpret the laws, not to write them.  The latter power belongs primarily to the people and the political branches of government [citation].  It cannot be too often repeated that due respect for the political branches of our government requires to interpret the laws in accordance with the expressed intention of the Legislature.  'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.'" [internal citations omitted].

In the present case, Safeway is entitled to a judicial declaration of what the amended Ordinance means that is consistent with common ordinary usage of language, and that prohibits sales of tobacco products only "in" a "pharmacy."  It is entitled to protection against a law making "in" the equivalent of "outside" a pharmacy, and expanding the term "pharmacy" into a "general grocery store," outside of any reasonable definition of "pharmacy."  In other words, Safeway is entitled to be governed under a rule of law which does not call a deer a horse, whenever it suits the whim of the emperor.

**B.      Second Claim for Relief: The requirement that Safeway give up its right to operate a lawful business, a pharmacy licensed by the State, in order to conduct another lawful business, a retail grocery store that sells lawful tobacco products and many other products, is an unconstitutional condition.**

In *Nollan v. California Coastal Commission* (1987) 483 U.S. 825, the Supreme Court held that the State could not impose a condition on obtaining a permit to rebuild a house on coastal property which would require the landowner to give the state, without charge, an easement on the landowner's property for use by the public in going along the property from one beach to another. The Court held that this was an unconstitutional condition.  There were no civil rights involved, such as the right of free speech, but a property right, that is, the right to have exclusive use of one's property.  There was no question but that the ownership of the property was lawful.

1    In *Frost v. Railroad Commission of the State of California* (1926) 271 U.S. 583, 607, a

2  seminal decision dealing with the prohibition of unconstitutional conditions, Justice Sutherland

3  stated the principles prohibiting such conditions as an improper use of the police power to

4  regulate, as follows:

> "It would be a palpable incongruity to strike down an act of state legislation
> which, by words of express divestment, seeks to strip the citizen of rights
> guaranteed by the federal Constitution, but to uphold the act by which the same
> result is accomplished under the guise of a surrender of a right in exchange for a
> valuable privilege which the State otherwise threatens to withhold."

The opinion went on to underscore the unconstitutional aspects of such conditions:

> "It is not necessary to challenge the proposition that, as a general rule, the state,
> having power to deny a privilege altogether, may grant it upon such conditions as
> it sees fit to impose. But the power is not unlimited, and one of the limitations is
> that it may not impose conditions which require the relinquishment of
> constitutional rights. If the state can require the relinquishment of one
> constitutional right as a condition of its favor, it may, in like manner, compel a
> surrender of all. It is inconceivable that guarantees embedded in the Constitution
> may thus be manipulated out of existence." Id.

In *Frost*, the issue was economic: whether the state could make private carriers subject to

the duties and burdens of common carriers. In terms applicable to our case, where the City seeks

to convert a "retail grocery store" into a "pharmacy" to escape the plain meaning of "in a

pharmacy," the Supreme Court said "consistently with the due process clause of the Fourteenth

Amendment, a private carrier cannot be converted against his will into a common carrier by mere

legislative command" (*Id.*, at p. 592).

The City asserts in a footnote to its Opening Brief (p. 5, n.4) that unconstitutional

conditions cases "traditionally" involve the relinquishment of fundamental constitutional rights,

such as the right to free speech. This approach misstates the law. It ignores *Nollan* and *Frost*. It

in effect states that there is no constitutionally protected right in the United States or in California

to conduct a lawful business and, if there is, the right is not "fundamental." This would be

surprising to the Framers of the Constitution, as interpreted by the *Nollan* and *Frost* courts. In

*Dobbins v. Los Angeles* (1904) 195 U.S. 223, 236-237, the Supreme Court stated:

"It may be admitted that every intendment is to be made in favor of the lawfulness of the exercise of municipal power, making regulations to promote the public health and safety and that it is not the province of the courts, except in clear cases, to interfere with the exercise of the power reposed by law in municipal corporations for the protection of local rights and the health and welfare of the people in the community. But notwithstanding this general rule of law, it is now thoroughly well settled by decisions of this court that municipal by-laws and ordinances, and even legislative enactments  undertaking to regulate useful business enterprises, are subject to investigation in the courts with a view to determining whether the law or ordinance is a lawful exercise of police power, or whether, under the guise of enforcing police regulations, there has been an unwarranted and arbitrary interference with the <u>constitutional right to carry on a lawful business, to make contracts, or to use and enjoy property</u>." (emphasis added)

In California, the right to conduct a lawful business is likewise recognized as a constitutional right entitled to protection. In *O'Hagen v. Board of Zoning Adjustment of the City of Santa Rosa* (1971) 19 Cal App. 3d 151, 158, the Court of Appeal said that in each instance involving the application of a police power ordinance, "in order to justify the interference with the *constitutional right to carry on a lawful business* it must appear that the interests of the public generally require such interference and that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals [citing *Lawton v. Steele* (1894) 152 U.S. 133, 137 (emphasis added)]. As observed in *Lawton,* "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private businesses, or impose unusual or unnecessary restrictions upon lawful occupations."

Safeway's operation of a pharmacy in each of the Safeway properties was and is lawful. The operation of the pharmacy had been licensed by the State and permitted by the City. Further, the City had also recognized the lawfulness of tobacco sales, per se, by issuing licenses to sell tobacco products to Safeway.

The City withdrew Safeway's permit to sell tobacco products in 10 of its San Francisco stores solely because those stores also operated a lawful pharmacy. This was an unlawful condition placed on the exercise of constitutional rights to conduct a lawful business, that is, Safeway must relinquish the constitutional right to conduct one type of lawful business (operation of a pharmacy), as a condition to exercise the right to conduct another type of lawful business (the

1  sale of tobacco products).  In *Nollan,* the Supreme Court refused to sanction such a conditioning

2  of constitutional rights, even where it was clear that the citizen had no preexisting right to a permit

3  and in fact had gone ahead and built his new building without a permit.  In the present case

4  Safeway had made an investment in both its pharmacy and in its sales of tobacco products—one

5  of which it necessarily has to forfeit under the amended Ordinance as currently applied.   This

6  coercion is the imposition of an unconstitutional condition which renders the ordinance void, and

7  unenforceable, as to Safeway.

8      C.    **Third Claim for Relief:  The Ordinance As Amended Violates Federal and State**

9              **Guarantees of Equal Protection**

10        The Equal Protection Clause of the Fourteenth Amendment "keeps governmental

11  decisionmakers from treating differently persons who are in all relevant respects alike."

12  *Nordlinger v. Hahn* (1992) 505 U.S. 1, 10, 112 S.Ct. 2326, 2331.   There are two elements to a

13  meritorious Equal Protection claim.  The first element requires Safeway to allege that the City has

14  adopted a classification within its Ordinance that affects two or more similarly situated groups in

15  an unequal manner.  The second element is that the Complaint must state facts showing that the

16  differential treatment is not rationally related to any legitimate purposes of the Ordinance.  The

17  City moves to dismiss Safeway's Equal Protection claims because, it argues, (1) the Ordinance

18  does not treat similarly situated groups differently and (2) because it contends its unequal

19  treatment of retail stores *with* pharmacies versus retails stores *without* pharmacies is rationally

20  related to the legitimate purposes of the Ordinance.  Neither argument has merit.

21          1.  The Ordinance Treats Similarly-Situated Businesses Differently

22        The amended Ordinance regulates the issuance of permits to sell tobacco products.  The

23  purpose of the Ordinance as originally enacted, and as amended, is to regulate in various ways

24  who may sell tobacco products and under what circumstances.  Accordingly, the entities that are

25  similarly-situated with respect to the City's Tobacco Permit Ordinance are those businesses that

26  are (or would be, but for the enactment of the Ordinance in 2008 and its amendment in 2010)

27  eligible to obtain a permit to sell Tobacco products in San Francisco.  This includes pharmacies,

28

general grocery stores, big box stores, and other retailers (e.g., corner stores; gas stations; liquor stores) in San Francisco.

The amended Ordinance treats these similarly situated entities differently:  the City revoked the permits to sell tobacco products for retailers who have a licensed pharmacy *somewhere* within the four walls of their store (no matter how far-flung those quarters might be: in 9 of the 10 affected Safeway stores in San Francisco, customers in the pharmacy cannot even *see* the customer service desk where tobacco products used to be sold [*see* Murphy Decl. ¶ 2]).  By contrast, the City will issue permits to sell tobacco products to any otherwise compliant retailers who do not have a licensed pharmacy.

The City contends that Safeway's stores containing pharmacies are not similarly situated to other retailers that lack pharmacies on the premises.  Its argument is circular:  The City claims that retail stores with pharmacies are not similarly situated to retail stores without pharmacies because the City says in its Ordinance that they are to be treated differently, not that they are meaningfully different.  But the classification created by the Ordinance as amended – the unequal treatment given to retail stores with pharmacies as contrasted with retail stores without pharmacies – is the classification being challenged by this Complaint, and:

> "A State cannot deflect an equal protection challenge by observing that in light of the statutory classification all those within the burdened class are similarly situated.  The classification must reflect pre-existing differences; it cannot create new ones that are supported only by their own bootstraps. 'The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes.'"  *Nordlinger v. Hahn*, *supra*, 505 U.S. at 34, quoting *Rinaldi v. Yeager* (1966) 384 U.S. 305, 308.

Yes, that is exactly what the City's argument amounts to here.

The City's Opening Brief, having accepted its own circular logic, makes little effort to show why retail stores *with* pharmacies are not similarly situated to retail stores *without* pharmacies for purposes of the issuance of a permit to sell tobacco products.  It simply assumes that the presence or absence of a licensed pharmacy is the end of the inquiry, not the beginning.  However:

"[t]here is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The 'similarly situated' prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." *Fenn v. Sherriff* (2003) 109 Cal.App.4[th] 1466, 1488, quoting *People v. Nguyen* (1997) 54 Cal.App.4[th] 705, 714.

The City argues that retail stores with pharmacies are not similarly situated because the mere presence of a licensed pharmacy somewhere within a general grocery or big box store transmogrifies the retailer into a "participant in the health care delivery system" (a vague term neither mentioned in the legislative history nor readily amenable to definition), whereas general grocery stores and big box stores without pharmacies are presumably not. The City's reasoning is also contradicted by the judicial admissions it and amicus California Medical Association made in the *Walgreen* case (see pp. 1, 4 *supra*, and pp. 15-18, *infra*), and is in any event unsupported by the facts: general grocery stores and big box stores without pharmacies also heavily emphasize health and safety. Each also sells a wide variety of "over the counter" ("OTC") drugs and medicines.[3]

---

[3] OTC drugs and medicines may be sold directly to a customer without a prescription by general grocery stores and by other retailers without pharmacies. OTC drugs relieve aches, pains and itches, prevent or cure tooth decay and athlete's foot and other conditions, or manage recurring problems, such as migraines or physical inflammation. They also include smoking cessation products, including nicotine patches. Other OTC products include herbal remedies, sunscreens, anti-microbial and anti-fungal medicines, and cough and cold remedies. In addition, stores that sell OTC medications also sell equipment used to promote and maintain health and safety (e.g., blood pressure monitors, blood sugar testing lancets and strips, contact lens solution, wound treatment bandages, canes, and walkers). Prescription drugs that have proved themselves to the FDA's satisfaction as being appropriate and safe may be switched from prescription to OTC status. Benadryl, Diphenhydramine and Loratadine (anti-histamines) and Cimetidine (h2 blocker for heart burn) are recent examples. See generally *Weinberger, Secretary of Health Education and Welfare et al.* v. *Bentex Pharmaceuticals, Inc., et al.* (1973) 412 U.S. 645 [OTC products recognized and discussed]; www.wikipedia.com ["*Over the Counter Drug*"]; the City's *Statement of Legislative Findings* underlying the Ordinance, fn. 22. "U.S. Department Of Health and Human Services, "*Treating Tobacco Use And Dependence*" (2008).

Moreover, in *Walgreens*, the City argued that grocery stores with pharmacies obtain 94% of their revenue from sales of groceries and related products, not from the pharmacies. It assumed that grocery stores without pharmacies obtained 100% of their revenues from these same general sources. Based in part on this factor, the City argued that the Safeway stores and big box stores with pharmacies were essentially the same, in economic terms, as other retail outlets, and were factually and substantively unlike the drugstores at issue in Walgreens which realized a distinctively large percentage of revenues from their pharmacies. The city took the position that it was the much greater role of the pharmacies in the Walgreen stores that made it rational and permissible to ban sales of tobacco products in Walgreen Stores, but not in general grocery stores such as Safeway. But here, the City takes the opposite approach. It asserts that grocery stores with pharmacies are unlike grocery stores without pharmacies and not entitled to Equal Protection, despite its earlier, contrary position. This establishes an arbitrary and unprincipled differentiation, a basic denial of Equal Protection.

> 2.   The Classification Adopted By the Amended Ordinance Is Not Rationally Related to Any Legitimate Purpose.

Under the applicable rational basis test, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational * * *." *Nordlinger v. Hahn, supra*, 505 U.S. at 12. Thus, "legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" *Rinaldi v. Yeager, supra*, 384 U.S. at 309. The admissions of the City found in the legislative history of the initial Ordinance and in its defense of that initial Ordinance undermine any rational basis for adding general grocery stores with pharmacies to the list of places to be denied permits to sell tobacco.

1    The City argues that the amended Ordinance addresses two basic issues: if permitted to

2 sell tobacco products anywhere in the store, stores with pharmacies would give the "wrong idea"

3 to young people about cigarettes, and would in addition face a conflict of interest by selling

4 medicines that address the ills caused by tobacco use all the while also selling tobacco products.

5 The City's opening brief confirms that "[b]oth purposes are premised on the basic notion that

6 when a store contains a pharmacy, it is participating in the health care delivery system, not unlike

7 doctors and hospitals." *See* Opening Brief at 8:1-9; see also *Id.* at 9:24-25. To see why this

8 argument fails to create any rational basis for the Ordinance as amended, the Court need only

9 review the judicial admissions the City made in the *Walgreen* case by the City that show that the

10 legislative facts on which the classification here rests were known by the governmental

11 decisionmakers to be inaccurate.

12    In its brief in the Court of Appeal in the *Walgreen* case, the City represented to the Court

13 that "the Board [of Supervisors] rationally concluded that *society is far more likely to view drug*

14 *stores as health-promoting institutions, as compared to big box stores or grocery stores. And that*

15 *is true even if some big box stores and grocery stores happen to contain pharmacies.*" *See*

16 Respondents' Brief in *Walgreen Co. v. The City and County of San Francisco*, 2009 WL 1933273

17 at p. 4 [emphasis supplied]. Similarly, "nobody would dispute that if doctor's offices sold

18 cigarettes, this would send the wrong message about smoking, because doctors are widely

19 understood to be in the business of promoting health. *By comparison, the sale of cigarettes by big*

20 *box stores and grocery stores does not create nearly the same problem, because those stores are*

21 *not viewed as health-promoting institutions in nearly the same way.*" *Id.* Indeed, although the

22 San Francisco Ordinance as amended now purports to ban tobacco sales by Safeway stores with

23 pharmacies because customers view pharmacies as part of "the health care system," the City

24 admitted elsewhere that this justification for the Ordinance as amended is inaccurate: "the

25 interchangeable use of the terms 'drug store' and 'pharmacy' further proves our point by

26 confirming *the common sense assumption, adopted by the Board, that society views drug stores*

27 *differently from big box stores or grocery stores. Nobody would describe Safeway or Costco as a*

28

1  *'pharmacy.'"  Id. at *18 [emphasis supplied].   Nobody, that is, except for a Board of Supervisors

2  seeking to justify an amended Ordinance.

3       The leading voice behind the original Ordinance, Dr. Katz, vigorously defended the

4  exclusion of general grocery stores and big box stores with pharmacies from the sweep of the

5  original Ordinance:

6       "Also people have been asking me, Well, you know, shouldn't you include all
        stores.  If you're going to do this, you know, let's be fair, look at all stores.  But I
7       ask you, in your own experience, if we stop people going into a Walgreens, going
        into a Rite-Aid, going into one of these independent pharmacies and said, "What
8       kind of store are you going into?"  They would say, "Pharmacy."  If you stop
        someone going into a supermarket and said, "What kind of store are you going
9       into?" **even a supermarket that has a drugstore**, they'd say, "I'm going into a
        supermarket." And that's the social perceptibility difference." *See*, July 17, 2008
10      Testimony, p. 4, attachment to Declaration of Emily V. Martinez, submitted by
        the City in its Request for Judicial Notice.
11

12  In the light of these admissions, the City cannot show that its expansion of the Ordinance to cover

13  general grocery stores with pharmacies is a consistent and principled treatment of retail outlets that

14  sell tobacco products, i.e., rational.[4]

15       In expanding the scope of the Ordinance the Board of Supervisors simply substituted one

16  classification determined to have been inappropriate [purporting to distinguish between

17  contemporary "drug stores" on the one hand and general grocery stores and big box stores on the

18  other] with another inappropriate classification [putting general grocery stores *with* pharmacies at

19  a competitive disadvantage to general grocery stores (and other retailers) *without* pharmacies].

20  And where, as here, the Ordinance as amended, under the guise of regulating "pharmacies,"

21  actually intrudes upon unrelated commercial activity within the retail store, it does nothing more

22

23  [4]   The City may argue that it was administratively convenient to add grocery stores as a quick fix
    for the Equal Protection issue decided by the *Walgreen* case, even though these stores'
24  relationship to the central purpose of the act was, by the City's own admissions, attenuated.
    Administrative convenience by itself, however, is not a legitimate governmental interest sufficient
25  to sustain the unequal treatment of similarly situated entities. See, e.g., *Children's Hospital &
    Medical Center v. Bonta* (2002) 97 Cal.App.4[th] 740, 771 [difficulty in conducting out of state
26  surveys fails to justify unequal treatment of out of state hospitals treating Californians]; *United
27  States Steel Corp. v. Public Utilities Com.* (1981) 29 Cal.3d 603, 614 [difficulty in determining
    which grade of steel being hauled].

28

1    than "favor one class of [business persons] over another" and is unconstitutional. *Carlin v. City of*

2    *Palm Springs* (1971) 14 Cal.App.3d 706, 715 [city ban on advertising the price of

3    accommodations on outdoor signs overturned].

4        The *Walgreen* decision itself gives no imprimatur to the City's amended Ordinance.  That

5    decision found that the original Ordinance irrationally treated some retail stores with pharmacies

6    differently than other retail stores with pharmacies.  Any suggestion in the opinion that treating all

7    retail stores with pharmacies differently than retail stores without pharmacies for purposes of

8    issuance of permits to sell tobacco addressed an issue not before the Court and was, at best, *dicta*:

9    no grocery stores or big box stores with pharmacies participated in or were heard in the *Walgreen*

10   case.

11       The City also cites support "from major health care organizations" which oppose "the sale

12   and marketing of tobacco products, including cigarettes, *in a pharmacy*".  See Opening Brief at

13   10-11 [emphasis supplied].[5]  But the fact is that no Safeway pharmacy or pharmacist sells tobacco

14   products "in a pharmacy" or is involved in the sale of tobacco products.  The CMA's amicus brief

15   does not provide the Court with additional legal guidance.  The CMA is against tobacco product

16   sales in any form.  In this case, CMA's amicus brief asserts that "[u]nlike stores that do not offer

17   pharmacy services, stores that contain pharmacies pose a unique problem in the context of the

18   anti-smoking campaign when they also sell cigarettes.  Stores that offer pharmacy services, such

19   as Safeway stores, are health care delivery outlets where patients go to receive health care services

20   and prescription drugs." CMS Brief at 3:24-4:1.  However, in the amicus brief it filed in the

21   Walgreen case, the CMA argued differently:

22       "Contrary to Walgreens' assertions, there are significant differences in how these
23       public health concerns apply to drug stores, on the one hand, and big box or grocery
          stores, on the other hand. * * * **Although prescription drug services can be**
24       **offered in grocery stores or big box stores, such stores like Safeway or Costco**

---

[5]    The City's Brief at footnotes 6-11 references statements from medical and pharmacist groups
26   that support prohibitions on tobacco product sales mostly *in* pharmacies.  The few that seem to
     advocate a store-wide ban on tobacco sales appears to do so as a matter of their own policy.  These
27   materials are not a substitute for the actual legislative history.  See Safeway's Response to CMA's
     Amicus Brief, filed concurrently herewith.
28

may promote their pharmacy services but they are not perceived as, nor do they hold themselves out to be, 'pharmacies.'" CM Amicus Curiae Brief in Walgreen Co. v. The City and County of San Francisco, 2009 WL 2847350 at *4-*6; CMA Brief, attached as Exh. 2 to Safeway's RJN at pp. 5-6 [emphasis added].

"Grocery stores and big box stores in San Francisco – for example, **Safeway and Costco – may also offer and promote pharmacy services but unlike Walgreens these retailers do not market themselves as 'pharmacies,' and no one would associate or perceive them to be pharmacies.**" Id. at * 21 [emphasis supplied].

It is puzzling why CMA would take such contradictory positions.

As alleged in the Complaint, the general grocery stores and other retailers without pharmacies convey the same message of health and safety as do stores containing pharmacies – all sell a variety of health products and over the counter medications, and all advertise in one form or another the healthful nature of their other products. Complaint ¶ 65. The City has simply drawn an arbitrary line, depriving some similarly situated retailers of rights retained by other similarly situated retailers who convey and profit from the same alleged message of health, and who face the same purported "conflict of interest" in that they sell simultaneously tobacco products and OTC medicines designed to address the problems associated with the use of tobacco products. And as conceded in the amended Ordinance, it was not designed to target problems arising from tobacco sales at Safeway stores with pharmacies, but instead the amendment was "proposed to head off further litigation over the proper remedy in the Walgreen case and remove any cloud over ongoing enforcement of the [Ordinance]." Complaint, Exh. E, Legislative Digest.

The line-drawing created by the Ordinance as amended – favoring some competitors over others – cannot reasonably be salvaged as a constitutionally-permissible classification arising from the City's exercise of its discretion to address one aspect of a problem while neglecting other aspects. *Compare*, e.g., *New York Friends of Ferrets v. The City of New York* (S.D.N.Y. 1995) 876 F.Supp. 529, 539 [permissible to ban ferrets as pets without banning pit bull terriers at the same time]. Here, the City simply elected to moot an ongoing lawsuit by expanding the coverage of its tobacco sales ban to entities that were, by its own judicial admissions, not a part of the problem and as to whom the City had seen no real reason to regulate. "A legislative body addressing a particular area need not attack all problems at once but generally may address one or

1   more, pursuant to perceived priorities.  Yet in striking the evil where it is felt most the lawmakers

2   may not be capricious; again, their decision must have a rational basis in light of the objectives."

3   *United States Steel Corp. v. Public Utilities Com.*, *supra*, 29 Cal.3d at 613.  Here, certainly, an

4   Ordinance resting on factual arguments the City contradicted on other occasions is an example of

5   denial of Equal Protection.

6          D.     **Fourth Claim for Relief: The Amended Ordinance Violates Safeway's**
               **State and Federal Due Process Rights Because, as the City's Legislative**
7              **History and Judicial Admissions Establish, It Has No Substantial**
               **Relationship to Public Health or Welfare.**
8

9          Safeway's Fourth Claim alleges that the inclusion of grocery stores by amendment to the

10  Ordinance violates Safeway's substantive due process rights under Article I, Sections 7 and 15 of

11  the California Constitution, and Section 1 of the Fourteenth Amendment of the United States

12  Constitution.  Contrary to the City's cursory and remarkably slim argument, Safeway's

13  Constitutional claim does not depend upon the City's curious definition of "pharmacy," which the

14  City in effect says means in the same building as a pharmacy, as well as the common meaning of

15  that word.

16         Safeway may assert a due process violation where a classification violates the equal

17  protection clause of the Fourteenth Amendment, *Johnson v Robinson*, (1974) 415 U.S. 361, 390

18  fn. 4 ["If a classification would be invalid under the equal protection clause of the Fourteenth

19  Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment"].

20         The Ordinance is overly broad.  A purpose of the Ordinance was to prevent children and

21  adolescents from mistakenly concluding that tobacco products were safe when sold in drug stores

22  and pharmacies (which the City's *Walgreen* Brief likened to a doctor's office).  Dr. Katz

23  undermined the assumption consumers young or old made the same faulty assumptions about

24  tobacco products sold at general grocery stores which they were likely to make at drug stores.[6]

25

26  ─────────────────────
    [6]  See testimony of Dr. Katz at p. 4, Exhibit A to City's Request for Judicial Notice,  [commenting
27  that persons entering a Walgreen or Rite-Aid perceive that they are going to a "pharmacy" and
    those going to a supermarket with a pharmacy perceive that they are going to a supermarket, not a
28  pharmacy]; pp. 5-6 [stating that the aim of the legislation is not to ban all sales of tobacco, and that

─────────────────────

1  Further, in other contexts the City argued that *"those stores [general grocery stores] are not*

2  *viewed as health-promoting institutions in nearly the same way [pharmacies and drug stores*

3  *are viewed]."*  Item 1 to Safeway's Request for Judicial Notice, the City's June 10, 2009 Brief

4  filed in the *Walgreen* case at page 1, paragraph 3.

5      By treating grocery stores with pharmacy departments in the same broad way as drug

6  stores, and by treating Safeway differently than grocery stores and other retailers without

7  pharmacies, the City has deprived Safeway and other grocers of substantial income from sales of a

8  lawful product long offered to the public.  The City took the position through its Director of Public

9  Health in the legislative history cited above, and in its briefing before the California Court of

10  Appeal, that grocery stores with pharmacy departments which also sell tobacco products *do not*

11  *mislead* the public into believing that tobacco products are safe.  As a result, inclusion of grocery

12  stores within the scope of the Ordinance is arbitrary and a denial of substantive due process.

13  *Foucha v. Louisiana* (1992) 504 U.S. 327, 331 [Substantive due process bars certain arbitrary,

14  wrongful government actions regardless of the fairness of the procedures used to implement

15  them]; *Committee of United States Citizens Living in Nicaragua* v. *Reagan* (D.C.Cir. 1988) 859

16  F.2d 929, 944 [Substantive due process prevents government action that is "legally irrational [in

17  that] it is not sufficiently keyed to any legitimate state interests]; *Adamson Companies v City of*

18  *Malibu* (C.D.Cal. 1994) 854 F.Supp.1476, 1485 [Eight year rent roll back provision not

19  reasonably related to protecting tenants from unfair rent increases where City lacked evidence in

20  support of measure other than complaints of tenants which had not been investigated; the broad

21  reach of the Ordinance made it arbitrary].

22          **E.        Fifth Claim for Relief:  The Ordinance is Preempted Because It**
                        **Intrudes Upon the State's Exclusive Control of the Pharmacy**
23                      **Profession**.

24          The Ordinance forbids the sale of tobacco products in retail stores in which a licensed

25  pharmacy is found.  Safeway's Fifth Claim alleges that the Ordinance is preempted by the State's

26

27  the focus is upon "health promoting" drug stores, not big box stores or "food stores" against whom

28  the arguments favoring the legislation are "a lot weaker."]

comprehensive and century-old regulation of the profession of pharmacy through the "Pharmacy Law," California Business and Professions Code Section 4000 *et seq.*[7] The City provides neither authority nor any argument establishing that the Ordinance permissibly governs a purely local matter. It cannot do so because the Legislature and the California Board of Pharmacy exclusively govern the profession for the protection of the California public.

                1.     The State of California Comprehensively Regulates the Profession of Pharmacy For the Safety and Protection of the Public.

The City's Opening Brief ignores the State's complete regulation of the pharmacy profession by the "Pharmacy Law," Business and Professions Code Section 4000 *et seq*, and the regulations enacted by the California Board of Pharmacy at California Code of Regulations, Division 17, Title 16. The City implies that the State's interest is limited to a few technical details such as the safe compounding and storage of drugs. Opening Brief at p.14:6-9. However, the State's Pharmacy Law does far more than establish these and other technical requirements. The Legislature and the Pharmacy Board instead govern every aspect of the pharmacy profession. The Legislature has left no aspect of the profession to local control.

The "highest priority" of the Pharmacy Board is the "[p]rotection of the public" in its licensing, regulatory and disciplinary functions. California Business and Professions Code Section 4001.1[8]; see also Section 4050 [containing a Legislative declaration that pharmacy is a profession that "applies a scientific body of knowledge to improve and promote patient health…"]. Section 4005 grants broad rule-making powers to the State Board of Pharmacy to protect the public and to establish rules of professional conduct to ensure the integrity and dignity of the

---

[7] Section 4000 provides: "This chapter constitutes, and may be cited as, the Pharmacy Law." The "creation, powers, and membership" of the State Board of Pharmacy were first enacted by Stats.1905, c.406, p.537 Section 5, West's Annotated Codes "Historical and Statutory Notes" to Section 4000 at p.154.

[8] Section 4001.1 provides:

"Protection of the public shall be the highest priority for the California State Board of Pharmacy in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

1   profession.[9]   The Board of Pharmacy's regulations take up, *inter alia*, pharmacist qualifications,

2   education, testing, licensing, practices, and discipline.  See California Code of Regulations,

3   Division 17, and Title 16.  The Pharmacy Law also provides that the Board may employ

4   inspectors authorized to visit pharmacies and investigate violations, Section 4008.

5         We reference the entire Pharmacy Law, as well as the Board's voluminous regulations to

6   demonstrate that the Legislature occupies completely the pharmacy profession field.  See Safeway

7   Request for Judicial Notice item [3] California Statutes governing the Profession of Pharmacy,

8   and item [4] California Code of Regulations, Division 17, Title 16, the Board of Pharmacy's

9   regulations.

            2.      The Ordinance Invades the State's Exclusive Regulation of the
10                  Pharmacy Profession.

11        A local ordinance conflicts with state law if it duplicates or contradicts general law or if it

12   "enters an area either expressly or impliedly fully occupied by general law." *American Financial*

13   *Services Ass'n. v. City of Oakland* (2005) 34 Cal 4th 1239, 1251; *Sherwin-Williams Co. v. City of*

14   *Los Angeles* (1993) 4 Cal.4th 893, 898; *Tolman v Underhilll* (1952) 39 Cal. 2d 708, 712 ["Where

15   the Legislature has adopted statutes governing a particular subject matter, its intent with regard to

16   occupying the field to the exclusion of all local regulation is not to be measured alone by the

17   language used, but by the whole purpose and scope of the legislative scheme."];  8 Witkin,

18

19   ───────────────────
     [9]  Section 4005(a) provides:

20   "The Board may adopt rules and regulations, not inconsistent with the laws of this state, as may be
     necessary for the protection of the public.  Included therein shall be the right to adopt rules and
21   regulations as follows: for the proper and more effective enforcement and administration of this
     chapter; pertaining to the practice of pharmacy; relating to the sanitation of persons and
22   establishments licensed under this chapter; pertaining to establishments wherein any drug or
     device is compounded, prepared, furnished, or dispensed; providing for standards of minimum
23   equipment for establishments licensed under this chapter; and pertaining to the sale of drugs by or
     through any mechanical device."

24
     Section 4005(c) provides:
25
     "The Board may, by rule or regulation, adopt, amend, or repeal rules of professional conduct
26   appropriate to the establishment and maintenance of a high standard of integrity and dignity in the
     profession.  Every person who holds a license issued by the board shall be governed and
27   controlled by the rules of professional conduct adopted by the board."

28

───────────────────

1   Summary of Cal. Law (10th Ed. 2005) Constitutional Law, Section 986, p. 551 ["Where the

2   Legislature has manifested an intention, expressly or by implication, wholly to occupy the field

3   municipal power is lost"].  Since 1905, the State has defined, licensed and regulated all aspects of

4   California's pharmacy profession pursuant to its police power.  *See Rosenblatt v California State*

5   *Bd. Of Pharmacy* (1945) 69 Cal.App.2d 69, 73 [State has broad power to regulate professions

6   generally; Pharmacy Law was enacted in 1905 to protect the health and safety of the people of the

7   State].

8           The Ordinance is preempted by state law.  The City impermissibly intrudes upon the

9   state's exclusive control over the profession of pharmacy in three related ways.  *First*, it seeks on

10  its face to regulate and burden the pharmacies with another level of administrative control.  Local

11  law which regulates or burdens a profession established by State law is preempted.  *Verner, Hilby*

12  *& Dunn v. City of Monte Serreno* (1966) 245 Cal.App.2d 33, 35 [local licensing and regulation of

13  engineers preempted by state licensing  and regulation]; accord: *Robillwayne Corp. v City of Los*

14  *Angeles* (1966)  241 Cal. App. 2d 57, 59, 61 [adjustors]; *Agnew v City of Los Angeles* (1958) 51

15  Cal.2d 1, 5 [electrical contractors]; *City & County of San Francisco v Boss* (1948) 83 Cal.App.2d

16  445, 449 [painting contractors]; *Horwith v Fresno* (19460 74 Cal.App.2d 443, 447 [electrical

17  engineers]; *Bacon v Los Angeles* (1970) 2 Cal.3d 535, 540 [attorneys].

18          *Second,* the amended Ordinance is based upon the City's (irrational) hypothesis that the

19  State's pharmacy license unwittingly assures the public that tobacco products for sale in any store

20  containing a pharmacy are safe.  However, the Legislature, and the Pharmacy Board it created, are

21  by statute the exclusive guardians of pharmacy safety.  See, e.g. Section 4001.1 establishing the

22  Board's highest priority to be protection the public.

23          *Third*, the requirements for, and the reputation and integrity of, the State license is

24  specifically a matter within the State's exclusive control; any actual or potential hazard or

25  confusion the license creates in the mind of the public must be addressed as part of the State's

26  exclusive authority to license the profession under Section 4200(a).

27          The City apparently asserts that the Legislature and the Pharmacy Board have just not gone

28  far enough to protect the public, despite the mandate of Section 4001.1.  Absent a statute allowing

them to do so, cities simply may not enact local laws to supplement areas within exclusive State authority and concern, no matter how pressing the perceived need, or how serious the risks faced by that city in the absence of local control measures, *O'Connell v City of Stockton* (2007) 41 Cal.4th 1061, 1073-1076 [local ordinance providing for forfeiture of vehicles used in street crimes was preempted by state law governing vehicle forfeitures]; *Tosi v City of Fresno* (2008) 161 Cal.App.4th 799, 806 [local regulation of scrap metal dealer to combat theft].

The City makes no showing that Safeway fails to state a preemption claim. Instead, it misconstrues that claim to rely solely upon the fact that the City's expansive and unnatural definition of "pharmacy" under San Francisco Health Code Section 1009.91(e) is inconsistent with the State definition of pharmacy. City Brief at pp.13:26-14:4. While the City's proposed interpretation of the definition of a "pharmacy"[10] is irreconcilable with both the everyday meaning of the word,[11] and with the statutory definition set forth at California Business and Professions Code Section 4037[12] [a pharmacy is an "area, place or premises licensed by the board in which the profession of pharmacy is practiced and where prescriptions are compounded"], the obvious conflict between these definitions is not the sole basis of Safeway's preemption claim.

## IV.  CONCLUSION.

The language of the amended Ordinance does not support the City's expansive interpretation and enforcement. But if the City's construction of the amended Ordinance is

[10]  Health Code Section 1009.91(c) defines a pharmacy to be "…a retail establishment in which the profession of pharmacy by a pharmacist licensed by the State of California…is practiced…A pharmacy may also offer other retail goods in addition to prescription pharmaceuticals…"

[11]  From *The American Heritage Dictionary* (2d. Coll. Edition, 1985) "2. A place where drugs are sold; drug store."

[12]  Business and Professions Code Section 4037(a) provides:

"'Pharmacy' means an area, place or premises licensed by the board in which the profession of pharmacy is practiced and where prescriptions are compounded. 'Pharmacy' includes, but is not limited to, any area, place, or premises described in a license issued by the board wherein controlled substances, dangerous drugs, or dangerous devices are stored, possessed, prepared, manufactured, derived, compounded, or repackaged, and from which the controlled substances, dangerous drugs, or dangerous devices are furnished, sold, or dispensed at retail."

1    correct, it is void as imposing an unconstitutional condition on the exercise of Safeway's

2    Constitutional rights, it is a denial of Safeway's right to Equal Protection under federal and state

3    law, and it violates the Due Process clauses of the federal and State Constitutions.  Finally, the

4    amended Ordinance is preempted by California law.  For the foregoing reasons, Safeway

5    respectfully asks the Court to deny Defendants' Motion to Dismiss.

6    DATED:  May 12, 2011                          DILLINGHAM & MURPHY, LLP
                                                   THOMAS J. KLITGAARD
7                                                  WILLIAM F. MURPHY
                                                   JOHN N. DAHLBERG
8

9

10

11
                                          By   /s/ William F. Murphy_____
12                                             Attorneys for Safeway Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28